1   Christopher B. Dolan (SBN 165358)
      chris@cbdlaw.com
2   Michael J. DePaul (SBN 231641)
      michael.depaul@cbdlaw.com
3   Ghazaleh Modarresi (SBN 259662)
      ghazaleh.modarresi@cbdlaw.com
4   **THE DOLAN LAW FIRM**
    1438 Market Street
5   San Francisco, CA 94102
    Tel: (415) 421-2800
6   Fax: (415) 421-2830

7
    Attorneys for Plaintiff
8   MARILOU RAYMUNDO

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13   MARILOU RAYMUNDO,                    Case No.: 3:13-CV-00442-WHA

14          Plaintiff(s),

15      v.                               **PLAINTIFF MARILOU RAYMUNDO'S
                                         OPPOSITION TO DEFENDANT ACS
16                                       STATE & LOCAL SOLUTIONS, INC.'S
    ACS STATE & LOCAL SOLUTIONS, INC., a MOTION TO COMPEL ARBITRATION
17  Corporation; and DOES 1 through 50,  AND STAY THE ACTION PENDING
    inclusive,                           ARBITRATION**
18          Defendant(s).
                                  /
19                                       Date:      April 18, 2013
                                         Time:      8:00 a.m.
20                                       Location:  Courtroom 8 - 19th Floor
                                                    450 Golden Gate Avenue
21                                                  San Francisco, CA 94105
                                         Judge:     Hon. William H. Alsup
22
                                         Complaint Filed: December 14, 2012
23

24

25

26

27

28

THE
DOLAN
LAW FIRM
THE LAW OFFICE
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO,
CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.     FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4
    III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
5
            A.    ACS's Reliance On Federal Policy Favoring Arbitration Is Misplaced. . . . . . . . . . . . 3
6

7           B.    State Law Governs The Contract Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8           C.    No Contract Exists Between Plaintiff And ACS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9                 1.    There Is No Contract to Enforce. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
10
                  2.    ACS' DRP Is Not A Contract, But An Illusory Promise. . . . . . . . . . . . . . . . . 4
11

12          D.    The Arbitration Agreement Is Unconscionable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13                1.    The Arbitration Agreement Is Procedurally Unconscionable. . . . . . . . . . . . . . 4

14                      a.    Defendants Never Provided Plaintiff With Any Rules. . . . . . . . . . . . . 4

15                      b.    Plaintiff Had No Opportunity to Negotiate the 'Agreement'. . . . . . . . . 4
16
                  2.    The Arbitration Agreement Is Substantively Unconscionable. . . . . . . . . . . . . 4
17

18                      a.    The Arbitration Agreement Is Not Mutual; It Only Requires the Claims
                              Likely to Be Brought by Employees to Be Arbitrated. . . . . . . . . . . . . 4
19

20                      b.    The Arbitration Agreement Gives ACS Unilateral Power To Terminate
                              and/or Modify The Agreement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
21

22                      c.    The Policy's Confidentiality Provisions Are Not Mututal, Are Overbroad
                              and Contravene Public Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
23

24                      d.    ACS's DRP Seeks to Avoid State Law Analysis. . . . . . . . . . . . . . . . . . 4

25          E     Severance Cannot Remove The Taint of Unconscionability. . . . . . . . . . . . . . . . . . . . 16

26   IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

27

28

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

1

**TABLE OF AUTHORITIES**

2

**Federal Statutes**

3   9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

4

5   **California Statutes**
California Civil Code § 1550. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
6   California Civil Code § 1565. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
California Civil Code § 1580. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
7   California Civil Code § 1670.5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
California Labor Code § 232.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

9   **Federal Cases**
*AT&T Mobility LLC v. Concepcion*
10     (2011) 131 S. Ct. 1740. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 10

11
*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*
12     (9th Cir.2010) 622 F.3d 996, 1004.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13   *Chavarria v. Ralphs Grocer Co.*
     (C.D. Cal. 2011) 812 F. Supp. 2d 1079. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
14

15   *Circuit City Stores, Inc. v. Adams*
     (9th Cir. 2002) 279 F.3d 889. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
16

17   *Delmore v. Ricoh Americas Corp.*
     (N.D.Cal. 2009) 667 F.Supp.2d 1129. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18
*Discover Bank v. Superior Court*
19     (2005)113 P.3d 1100. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20   *Dumais v. American Golf Corp.*
     (10th Cir. 2002) 299 F.3d 1216. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
21

22   *Ferguson v. Countrywide Credit Industries, Inc.*
     (9th Cir. 2002) 298 F.3d 778. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
23

24   *Floss v. Ryan's Family Steak Houses, Inc.*
     (6th Cir. 2000)  211 F.3d 306. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25

26   *Gibson v. Neighborhood Health Clinics, Inc.*
     (7th Cir. 1997) 121 F.3d 1126. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
27
*Hooters of America, Inc. v. Phillips*
28     (4th Cir. 1999) 173 F.3d 933. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


*Ingle v. Circuit City Stores, Inc.*
     (2003) 328 F.3d 1165. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11, 13

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

*Kilgore v. KeyBank, N.A.*
    (9th Cir. 2012) 673 F.3d 947. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lau v. Mercedes-Benz USA, LLC*
    (N.D. Cal. Jan. 31, 2012) CV 11-1940 MEJ, 2012 WL 370557. . . . . . . . . . . . . . . . . . . . . . . 11

*Pokorny v. Quixtar*
    (9th Cir. 2010) 601 F.3d. 987. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Renteria v. Prudential Ins. Co. of America*
    (9th Cir. 1997) 113 F.3d 1104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ting v. AT&T*
    (9th Cir. 2003) 319 F.3d 1126. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15


**State Cases**

*Abramson v. Juniper Networks, Inc.*
    (2004) 115 Cal. App. 4th 638. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ajamian v. CantorCO2e, L.P.*
    (2012) 203 Cal.App.4th 771. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Armendariz v. Foundation Health Psychcare Services, Inc.*
    (2000) 24 Cal.4th 83. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 14, 16

*Banner Entertainment, Inc. v. Superior Court*
    (1998) 62 Cal. App. 4th 348. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. Osborne Dev. Corp.*
    (*2008*) 159 Cal.App.4th 884. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Engalla v. Permanente Med. Group, Inc.*
    (1997) 15 Cal.4th 951. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fitz v. NCR Corp.*
    (2004) 118 Cal.App.4th 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 15

*Hilleary v. Garvin*
    (1987) 193 Cal.App3d 322. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lopez v. Charles Schwab & Co., Inc.*
    (2004) 118 Cal. App. 4th 1224. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

*Martinez v. Master Protection Corp.*
    (2004) 118 Cal.App.4th 107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*McManus v. CIBC World Markets Corp.*
    (2003) 109 Cal.App.4th 76. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
**TEL:** (415) 421-2800
**FAX:** (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

*O'Hare v. Municipal Resource Consultants*
    (2003) 107 Cal.App.4th 267. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ontiveros v. DHL Express (USA), Inc.*
    (2008) 164 Cal.App.4th 494. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pantoja v. Anton*
    (2011) 198 Cal.App.4th 87. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Peralta Comm. College Dist. v. F.E.H.C.*
    (1990) 52 Cal.3d 40. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roth v. Malson*
    (1998) 67 Cal.App 4th 552. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Romo v. Y-3 Holdings, Inc.*
    (2001) 87 Cal. App. 4th 1153. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Samaniego v. Empire Today LLC*
    (2012) 205 Cal.App.4th 1138. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Sparks v. Vista Del Mar Child and Family Services*
    (2012) 207 Cal.App.4th 1151. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Trivedi v. Curexo Technology Corp.*
    (2010) 189 Cal.App.4th 387. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Zullo v. Superior Court*
    (2011) 197 Cal.App.4th 477. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

**Secondary Sources**
1 Witkin, Summary of Cal. Law, Contracts, § 225 (10th ed. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

THE
DOLAN
LAW FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO,
CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

## I.    INTRODUCTION

This is a civil rights disability discrimination FEHA employment case.  Defendant ACS wrongfully terminated Plaintiff's 5-year employment for taking medical leave to attend to her serious and chronic health condition. ACS now is seeking to subvert Plaintiff's right to a jury trial via an alleged arbitration agreement alluded to in a vague, contradictory and unsigned, pre-employment application document entitled "Acceptance of, and Agreement to, ACS' Dispute Resolution Plan" ("DRP Acceptance Form") that Plaintiff never reviewed, initialed, signed or knowingly and voluntarily assented to. To obtain employment at ACS, Plaintiff Marilou Raymundo (hereinafter "Plaintiff") applied for a job through Spherion Staffing Services, a staffing agency Plaintiff was working with at the time to find new employment opportunities. (Raymundo Decl. ¶¶ 4, 5, 7, 10, 13, 14.) During the application process, and throughout her employment with ACS, Plaintiff never saw, and was never provided with, any type of "arbitration agreement", "Dispute Resolution Plan" or any sort of binding contract that would limit or otherwise require she waive any of her constitutional rights. (*Id.*) Indeed, the only document ACS provided to Plaintiff prior to her employment, which she reviewed and actually signed (and was required to sign), was Plaintiff's "offer letter" dated April 16, 2007.  (*Id.*,  Ex. 1.) Plaintiff's offer letter confirms her "at will" status, provides that ACS "may change any term or condition" of her employment "with or without cause or notice", and then states that Plaintiff must sign and return the letter within 3 days or the "offer will become invalid".

Plaintiff does not recognize and never initialed, signed or reviewed ACS's DRP Acceptance Form, and ACS never provided Plaintiff with the actual DRP itself at any time prior to her termination. (*Id.* at 4-7, 10, 12-14.) There simply is no enforceable contract between the Parties in this case, and even if the Court were to find that a valid contract was formed during Plaintiff's candidacy for employment, any such agreement would be both procedurally and substantively unconscionable. To illustrate Plaintiff's knowing waiver of her right to a jury trial, ACS relies on an automatically generated form created by a HireXpress employment application software (Ex. B-1, Berkemeier Dec.) that shows Plaintiff allegedly clicked through 9 documents in 6 minutes, with date/time activity for the DRP Acceptance Form indicating that Plaintiff allegedly passed over this form in less than 60 seconds, if at all.  Here, ACS offers no evidence that Plaintiff ever actually received, reviewed and

**THE DOLAN LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO, CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

1  signed the company's DRP Acceptance Form, and no evidence that ACS ever actually provided

2  Plaintiff with the DRP itself.  Plaintiff, for her part, confirmed that she not only never received either

3  of these documents, but that she also never agreed to arbitration, alternative dispute resolution or any

4  waiver of her rights to a jury trial for resolution of her disability discrimination and other FEHA-

5  related claims. Finding a contract via an automatically generated form Plaintiff disputes would

6  essentially uphold a classic and unlawful 'take it or leave it' arbitration agreement. Moreover, the DRP

7  was never disclosed to Plaintiff, and she never received a copy of it.  (*Id.* at ¶¶ 4, 7.) Enforcing a

8  valid agreement in this regard would impose on Plaintiff blind agreement to all of the terms contained

9  in an undisclosed and unexamined document that ACS controlled, but never provided or explained.

10  Under these facts, there could have been no "meeting of the minds" regarding the undisclosed essential

11  terms of ACS' purported arbitration agreement (e.g., the types of claims covered, the actual arbitration

12  procedures and rules, the virtual gag order contained in an onerous confidentiality provision, and the

13  provisions regarding fees and costs).  As the Court would have to impose an agreement upon Plaintiff

14  to undisclosed terms as a condition of employment, the DRP must be found to be procedurally

15  unconscionable. Moreover, the alleged arbitration agreement is also substantively unconscionable

16  because it 1) covers only the types of claims employees are likely to have; 2) requires arbitration

17  proceedings to be completely confidential and secret - unless the employer decides otherwise; 3)

18  reserves exclusively for the employer the unilateral power to change or terminate the DRP; and 4)

19  violates California public policy by attempting to insulate itself from examination for

20  unconscionability under the laws of the state of California.

21  **II.    FACTS**

22          To obtain employment at ACS, Plaintiff applied through Spherion Staffing Services, a staffing

23  agency she was working with at the time to find new job opportunities. (Raymundo Decl., ¶ 4.) To

24  apply for a position, Plaintiff utilized Spherion Staffing's computer system to complete her application

25  materials and submit those materials to ACS. (*Id.*)  Defendant's "Arbitration Agreement" consist of

26  two parts: DRP Acceptance Form and a Dispute Resolution Plan and Rules ("DRP"). During her

27  application process, Plaintiff never received the DRP Acceptance Form submitted to the Court in the

28

**THE DOLAN LAW FIRM**
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO, CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

2

1  Declarations of Jamie Son and Kelly Berkemeier. (*Id.*) Plaintiff does not recognize the document, and

2  does not recall ever even seeing it in the application process.  (*Id.*) The same is true for the "E-

3  Signature" and other documents ACS submitted to the Court.  (*Id.*)

4       Plaintiff has never seen the DRP document before, and she has never seen any type of

5  arbitration agreement or other document addressing the resolution of potential FEHA discrimination

6  and retaliation claims. (Raymundo Decl., ¶ 7.) Further, no one at ACS ever reviewed or discussed the

7  DRP with Plaintiff, no one at ACS ever reviewed or discussed any type of arbitration agreement with

8  Plaintiff, and no one at the company ever told her that she had to waive her right to a jury trial to be

9  employed or continue employment at ACS.  (*Id.*) Moreover, Plaintiff does not recall ever seeing the

10 DRP during her employment, and she does not recall ever viewing the DRP on any website and/or the

11 ACS intranet. (Raymundo Decl., ¶ 10.) Plaintiff also does not recall ever reviewing or discussing the

12 DRP with any co-workers, managers or any ACS representatives during her employment. (*Id.*) The

13 first time Plaintiff reviewed this document was during her review of the Declarations of Mr. Son and

14 Ms. Bekiemer.  (*Id.*)

15      While Plaintiff does recall completing an ethics training at ACS in approximately 2010,  the

16 ethics training she received focused almost exclusively on customer service issues related to the

17 performance of her job as a Customer Service Specialist. (Raymundo Decl., ¶ 13.) The training never

18 stated that Plaintiff was waiving any rights, let alone any Constitutional rights and/or her right to a jury

19 trial. (*Id.*) In fact, during Plaintiff's entire employment, ACS never provided her with any training or

20 any information that stated she was giving up her right to a jury trial and/or agreeing to limit her legal

21 claims to arbitration or any other kind of alternative dispute resolution process. (*Id.*)

22      In fact, during the entire application process leading up to Plaintiff's employment, the only

23 document Plaintiff ever signed (and was required to sign) with ACS was her April 16, 2007

24 employment offer letter entitled "Offer Letter Full-Time Non-Exempt under 30K." (Raymundo Decl.,

25 ¶ 5.)  This offer letter is the only document that Plaintiff signed for ACS, and it is the only document

26 that was provided to and reviewed with her prior to her accepting employment with ASC. (*Id.*)

27 Nowhere in Plaintiff's offer letter does ACS state or even imply that she had to waive any of her rights

28 to accept employment with the company. (*Id.*) Plaintiff's offer letter does not say anything regarding

**THE**
**DOLAN**
**LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,**
**CA**
94102
**TEL:** (415) 421-2800
**FAX:** (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

3

1    arbitration and/or alternative dispute resolution, it does not identify or reference any agreement or

2    contract between Plaintiff and ASC, and it does not say anything regarding Plaintiff agreeing to waive

3    her right to have a judge or jury resolve future disability discrimination and other employment/civil

4    rights related claims.  (*Id.*)

5        Indeed, Defendant has not offered any evidence that ACS actually provided Plaintiff a copy of

6    the DRP prior to Plaintiff's termination.  At best, ACS claims that the "DRP was available on ACS's

7    intranet. (Son Decl.)".  (Defendant's Motion, 2:10-11.)  It should be noted that the DRP consist of both

8    the "Plan" and the "Rules" of the DRP.  The DRP does not apply to Plaintiff's employment with

9    Defendant. Plaintiff can not assent to terms of a DRP that she never saw or received.  However, since

10   this DRP was presented by Defendant as the applicable DRP, Plaintiff is forced to proceed with her

11   argument that this alleged arbitration agreement is invalid, unconscionable, and without a modicum of

12   bilaterality. The DRP is an adhesion contract that is both procedurally and substantively

13   unconscionable.

14   **III.    ARGUMENT**

15       **A.    ACS' Reliance On Federal Policy Favoring Arbitration Is Misplaced.**

16       An arbitration agreement will generally be held enforceable under the FAA, except when there

17   exist grounds either "at law or in equity for the revocation of any contract."  (9 U.S.C. § 2(200).)

18   Defendant's arguments rely almost entirely on the public policy favoring arbitration, however such

19   reliance ignores the fact that the arbitration agreement must still comply with the essentials of contract

20   law. In *Lopez v. Charles Schwab & Co., Inc.*, the Court of Appeals stated that although both California

21   and federal law favored arbitration, "that policy does not come into effect until a court has concluded

22   that under state contract law, the parties entered into an agreement to arbitrate." ((2004) 118 Cal. App.

23   4th 1224, 1229.) The *Lopez* court found that "[t]here is no public policy favoring arbitration of

24   disputes that the parties have not agreed to arbitrate." (*Id.*) The *Lopez* court further stated that "the

25   FAA does not apply until the existence of an enforceable arbitration agreement is established under

26   state law principles involving formation, revocation and enforcement of contracts generally." (*Id.*)

27   ACS cannot simply rely on a policy without demonstrating its entitlement to the benefits of that

28

**THE
DOLAN
LAW FIRM**
THE DOLAN
BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

1  policy.

2  **B.      State Law Governs The Contract Analysis.**

3      Generally applicable contract defenses existing at law or in equity may be used to defeat the

4  enforcement of an arbitration agreement. State Law regulating contracts and applicable contract

5  defenses, including unconscionability, defeat enforceability of an arbitration agreement without

6  contravening the FAA.  (See 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion* (2011) 131 S. Ct. 1740,

7  1745.) Even assuming the FAA applies (which Plaintiff denies), the FAA does not create a special

8  status for arbitration agreements.  (*Id.*)

9      *Concepcion*, quoting the FAA, provides as follows: "The final phrase of §2 . . . <u>permits</u>

10  arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for

11  the revocation of any contract.' This savings clause <u>permits</u> agreements to arbitrate to be invalidated by

12  'generally acceptable contract defenses, such as fraud, duress, or unconscionability." (*Concepcion,* 131

13  S. Ct. at 1746 (emphasis added).)  "*Concepcion* did not overthrow the common law contract defense

14  of unconscionability whenever an arbitration clause is involved.  Rather, the Court reaffirmed that the

15  savings clause preserves generally applicable contract defenses such as unconscionability, so long as

16  those doctrines are not 'applied in a fashion that disfavors arbitration.'" (*Kilgore v. KeyBank, N.A.* (9th

17  Cir. 2012) 673 F.3d 947, 963.) ACS argues that the arbitration agreement is governed by and

18  enforceable under the FAA. (Defendant's Memo, 4:9-11.)  This argument is misguided and

19  misleading. Arbitration agreements are contracts, and enforceability is determined according to State

20  law just like any other contract.  (*Concepcion,* 131 S. Ct. at 1746.)

21  **C.      No Contract Exists Between Plaintiff And ACS.**

22      The party petitioning for arbitration bears the burden of proving the existence of a valid

23  arbitration agreement.  (*Engalla v. Permanente Med. Group, Inc.* (1997) 15 Cal.4th 951, 972.)  To be

24  sure, Courts cannot compel arbitration until and unless an enforceable agreement to arbitrate is

25  established.  (*Baker v. Osborne Dev. Corp.* (*2008*) 159 Cal.App.4th 884, 892.) However, in the case at

26  bar, there is no agreement to arbitrate.  ACS cannot demonstrate the existence of such a contract.

27  Defendant also ignores that an agreement to arbitrate must exist under state law.

28

**THE
DOLAN
LAW FIRM**
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
**TEL:** (415) 421-2800
**FAX:** (415) 421-2830

1        **1.     There Is No Contract to Enforce.**

2        California Civil Code § 1550 provides: "It is essential to the existence of a contract that there

3 should be: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and 4. A sufficient

4 cause or consideration." Civil Code § 1565 states: "[t]he consent of the parties to a contract must be: 1.

5 Free; 2. Mutual; and 3. Communicated by each to the other." Civil Code § 1580 states, in part:

6 "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." "The test

7 is whether a reasonable person would, from the conduct of the parties, conclude that there was mutual

8 agreement." (*Hilleary v. Garvin* (1987) 193 Cal.App3d 322, 327 (internal citations omitted); see also

9 *Roth v. Malson* (1998) 67 Cal.App 4th 552, 557.)

10        In *Banner Entertainment, Inc. v. Superior Court*, the Court of Appeals stated that "California

11 law is clear that there is no contract until there has been a meeting of the minds on all material points."

12 ((1998) 62 Cal. App. 4th 348, 357-358 (internal citations omitted).) Here, there could be no "meeting

13 of the minds" regarding Defendant's arbitration agreement because Plaintiff never saw the DRP or the

14 DRP Acceptance Form. Since Plaintiff never saw the documents, she could not have electronically

15 signed and/or assented to them and so cannot be bound by their terms.

16        Moreover, ACS has offered no evidence to show that the electronic signature on the DRP

17 Acceptance Form (*i.e.*, the initials 'mcr') was actually Plaintiff's signature, as opposed to an

18 automatically generated form produced by the HireXpress application software.  Indeed, Plaintiff's

19 evidence demonstrates that she never saw this document - and never initialed, signed or assented to it -

20 and ACS does not dispute that the document never actually was provided to Plaintiff. As such,

21 Defendant's alleged arbitration agreement lacks mutual assent. Since Plaintiff never saw the DRP

22 Acceptance Form, Plaintiff could not have agreed to all of the (undisclosed) terms in the DRP (which

23 ACS never provided).  Defendant's own evidence makes clear that Plaintiff could not even have read

24 the DRP Acceptance Form because she purportedly clicked through the software interface in 60

25 seconds or less.  (See, e.g., Ex. B-1 to Berkemier Decl.) In any event, **a knowing waiver of FEHA**

26 **employment claims does not occur where neither the arbitration clause, nor any other written**

27 **employment agreement provided to the employee, expressly puts the employee on notice that the**

28 **employee is bound to arbitrate his or her California State FEHA employment claims**.  (See

**THE**
**DOLAN**
**LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,**
**CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

1     *Renteria v. Prudential Ins. Co. of America* (9th Cir. 1997) 113 F.3d 1104 [finding arbitration

2     agreement invalid because it did not cite Title VII and state law sexual harassment claims so there was

3     no knowing agreement/waiver]; *Delmore v. Ricoh Americas Corp*. (N.D.Cal. 2009) 667 F.Supp.2d

4     1129, 1139.) **An arbitration agreement, therefore, that does not refer specifically to such**

5     **employment disputes cannot constitute a knowing waiver of an employee's right to a jury trial**.

6     (*Id*.) The DRP Acceptance Form fails in this regard. Moreover, in *Romo v. Y-3 Holdings, Inc.*, the

7     California Court of Appeal held that an arbitration agreement contained in an employee handbook was

8     not enforceable, despite the fact that the employee signed acknowledgment stating that she agreed to

9     be bound by benefits, policies, rules, and procedures contained within the remaining sections of the

10     handbook because the employee had not signed the arbitration agreement contained elsewhere in the

11     employee handbook. ((2001) 87 Cal. App. 4th 1153.) Similarly, here, Plaintiff did not sign the DRP

12     Acceptance Form, let alone the DRP, ACS never provided either to Plaintiff, and, indeed, Plaintiff

13     never even saw the actual DRP until now. Just as in *Romo*, the DRP Acceptance Form was mixed in

14     with multiple other documents that were purportedly given to Plaintiff to click through in the

15     application process. Since Plaintiff did not sign the DRP Acceptance Form, and never saw the actual

16     DRP, there was no contract and no valid arbitration agreement.

17                   **2.       ACS' DRP Is Not A Contract, But An Illusory Promise.**

18          ACS's DRP should be found unenforceable as Plaintiff never saw the DRP, nor the DRP

19     Acceptance Form. Despite this, the alleged arbitration agreement should still be rendered

20     unenforceable: where one party makes no binding promises, or makes promises subject to being

21     withdrawn at the promisor's pleasure, the contract is deemed to be unenforceable as it lacks mutuality.

22     (1 Witkin, Summary of Cal. Law, Contracts, § 225 (10th ed. 2005).) An agreement to arbitrate is

23     illusory if, as here, the employer can unilaterally modify the terms. (See *Sparks v. Vista Del Mar*

24     *Child and Family Services* (2012) 207 Cal.App.4th 1151; *Ingle v. Circuit City Stores, Inc*. (2003) 328

25     F.3d 1165, 1179 (unilateral modification substantively unconscionable pursuant to California law).)

26     Other Circuits similarly have held that a unilateral right to modify or terminate an alleged arbitration

27     agreement renders the agreement illusory and not enforceable. *(Dumais v. American Golf Corp.* (10th

28     Cir. 2002) 299 F.3d 1216, 1219; *Floss v. Ryan's Family Steak Houses, Inc*. (6th Cir. 2000) 211 F.3d

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO,
CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

306, 315-16; *Hooters of America, Inc. v. Phillips* (4th Cir. 1999) 173 F.3d 933, 939; *Gibson v. Neighborhood Health Clinics, Inc.* (7th Cir. 1997) 121 F.3d 1126.)

Here, the DRP provides Defendant the ability to alter, amend or terminate the DRP at will. The DRP states: "This Plan may be amended by Sponsor at any time by giving at least 10 days notice . . . to current employees." (Defendant's Motion, Ex. A-1 to Son Decl., DRP p.5, # 6.)  The DRP continues, "Sponsor may amend the Rules at any time by serving notice of the amendments on AAA or JAMS." (*Id.*)  The DRP further states: "This Plan may be terminated by Sponsor at any time by giving at least 10 days notice of termination to current Employees." (*Id.* at p.5, # 7.)

Because the DRP may be modified or cancelled unilaterally, it is illusory and not a valid contract.  Defendant's DRP allows Defendant to terminate or amend the plan with notice only to current employees, and it allows amendment of the rules via notice to a third party. Defendant is effectively allowed to change the rules, which were never provided to the Plaintiff in the first place, by giving notice to a third party who is not Plaintiff's agent, or even terminate the alleged agreement at will.

**D.      The Arbitration Agreement Is Unconscionable.**

Even if an Arbitration Agreement had been formed it would still fail for unconscionability. An arbitration agreement, like any other contract, is unenforceable when it is unconscionable under generally applicable State Law.  (*Concepcion,* 131 S.Ct. at 1746.)  Unconscionability includes both procedural and substantive aspects.  Procedural unconscionability relates to the circumstances surrounding the entering into of the 'agreement.' (*Armendariz*, (2000) 24 Cal.4th 83, 114.)  Procedural unconscionability exists if there was an absence of meaningful choice due to the inequality of bargaining power, *e.g.* adhesive contracts. (*Id.*; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114 (**adhesive contracts in employment are procedurally unconscionable**).) Substantive unconscionability may be found where the terms of a contract unreasonably favor one party, or the agreement was outside an adhering party's reasonable expectations.  (*Id.*)  Procedural and substantive unconscionability work in a sliding scale relationship: the more substantively oppressive the contract term, the less procedural unconscionability is required to render it unenforceable, and vice versa.  (*Armendariz*, *supra,* at 114).  Here, ACS' arbitration agreement is unconscionable in both

**THE DOLAN LAW FIRM**
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO, CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

8

1    regards.

2    **1.     The Arbitration Agreement Is Procedurally Unconscionable.**

3    ACS' arbitration agreement is procedurally unconscionable for two reasons reasons.  <u>First</u>, the

4    DRP which the DRP Acceptance Form attempts to in corporate, was never given to Plaintiff, which, in

5    this case, made it impossible for Plaintiff to have made a knowing and voluntary waiver of her

6    fundamental Constitutional rights.  <u>Second</u>, the arbitration agreement is adhesive and was presented as

7    a term of Plaintiff's employment, which alone is enough to render the 'agreement' procedurally

8    unconscionable.  *(Martinez, supra,* 118 Cal.App.4th at 114.)

9    **a.     Defendants Never Provided Plaintiff With Any Rules.**

10   California courts have consistently held that it is unconscionable to attempt to "incorporate"

11   rules of arbitration without providing the rules along with the contract.  (*See, e.g., Sparks v. Vista Del*

12   *Mar Child & Family Services* (2012) 207 Cal.App.4th 1511; *Samaniego v. Empire Today LLC* (2012)

13   205 Cal.App.4th 1138, 1146; *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 485-486; *Trivedi v.*

14   *Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 392-93); *Fitz v. NCR Corp.* (2004) 118

15   Cal.App.4th 702.)  The DRP Acceptance Form attempts to incorporate the DRP, yet Plaintiff was

16   never  provided the DRP (or any other rules) at the time she allegedly agreed to be bound.

17   Plaintiff also was never provided the arbitration rules of AAA or JAMS.  In *Trivedi*, the Court

18   found the defendant's failure to attach incorporated AAA rules to its arbitration agreement to be a

19   large factor in finding the agreement was procedurally unconscionable.  (*Trivedi, supra,* 189

20   Cal.App.4th at 393.)  The *Trivedi* court emphasized that "Numerous cases have held that the failure to

21   provide a copy of the arbitration rules to which the employee would be bound, supported a finding of

22   procedural unconscionability."  (*Id.*)

23   **b.     Plaintiff Had No Opportunity to Negotiate the 'Agreement.'**

24   Plaintiff had no meaningful opportunity to negotiate the terms of the arbitration agreement.

25   While the DRP Acceptance Form refers at one point to the resolution of the "vast majority of claims,"

26   and provides that its "terms and conditions" do not establish "any form of employment contract", the

27   document further states: "I understand that ACS' consideration of my application for employment and

28   any offer of employment that may be made to me are contingent on my acceptance of the DRP as the

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL:  (415) 421-2800
FAX:  (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

9

1  exclusive means for resolving all disputes covered under the DRP." (Defendant's Motion, Ex. A-2 to

2  Son Decl., DRP Acceptance Form.) There is no ability for employees to opt-out. (*Id.*) The DRP

3  Acceptance Form, which Plaintiff does not remember seeing nor signing, was purportedly provided to

4  Plaintiff during the <u>application process</u>.

5       As such, ACS' arbitration agreement is a 'contract' of adhesion. When arbitration agreements

6  are a condition of employment, there is "no question that [the employer] is the party of superior

7  bargaining power." (*Chavarria v. Ralphs Grocer Co.* (C.D. Cal. 2011) 812 F. Supp. 2d 1079, 1085-86

8  (finding the arbitration policy to be procedurally unconscionable because it was presented as "take it

9  or leave it").) It is not enough that Plaintiff had purportedly one minute to consider the 7-page

10  agreement. (See Defendant's Motion., Ex. B-1 to Berkemier Decl. (Plaintiff purportedly "saved" the

11  DRP Acceptance Form one minute (or less) after she "saved" the "Employers' Confidentiality/Trade

12  Secret Agreement"); *Ingle*, 328 F.3d at 1171 (rejecting Defendant's argument that three days' review is

13  sufficient to overcome procedural unconscionability, as the time to review is irrelevant).)

14       **"An arbitration agreement that is an essential part of a 'take it or leave it' employment**

15  **condition, <u>without more</u>, is procedurally unconscionable."** (*Martinez, supra,* 118 Cal.App.4th at

16  114 citing *Armendariz*, 24 Cal.4th at 113-15 (emphasis added); s*ee also Ajamian v. CantorCO2e, L.P.*

17  (2012) 203 Cal.App.4th 771, 796 (decided after *Concepcion*); *McManus v. CIBC World Markets*

18  *Corp*. (2003) 109 Cal.App.4th 76, 91.) *Martinez* found an arbitration agreement to be procedurally

19  unconscionable <u>solely</u> because it was a non-negotiable contract of adhesion that formed a condition of

20  employment. (*Martinez*, 118 Cal.App.4th at 114.) The Ninth Circuit, applying California law, also

21  held:

22       The [Arbitration Agreement] is procedurally unconscionable because it is a contract of
23       adhesion: a standard-form contract, drafted by the party with superior bargaining power,
        which relegates to the other party the option of either adhering to its terms without
24       modification or rejecting the contract entirely. [*Stirlen v. Supercuts, Inc.* 51 Cal.App.4th
        1519] at 145-46 (indicating that a contract of adhesion is procedurally unconscionable).

25  (*Circuit City Stores, Inc. v. Adams* (9th Cir. 2002) 279 F.3d 889, 893.)

26       *Concepcion* and other recent cases have not changed the fact that, under California law,

   adhesive contracts are procedurally unconscionable: "Although *Concepcion* made clear that consumer

27  contracts are typically adhesive in nature, 131 S.Ct. at 1750, 'California law treats contracts of

28

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

1   adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to

2   negotiate, as procedurally unconscionable to at least some degree.'" (*Lau v. Mercedes-Benz USA, LLC*

3   (N.D. Cal. Jan. 31, 2012) CV 11-1940 MEJ, 2012 WL 370557, *quoting Bridge Fund Capital Corp. v.*

4   *Fastbucks Franchise Corp.* (9th Cir.2010) 622 F.3d 996, 1004.)

5       Defendant's arbitration agreement is a take-it-or-leave-it agreement (not even a contract

6   purporting to be a mutual agreement), drafted by ACS, who surely has superior bargaining strength to

7   Plaintiff, and relegated Plaintiff the option of adhering to its terms without modification or rejecting it

8   entirely and losing her employment.  (*See Circuit City v. Adams*, 279 F.3d at 893.)  It is procedurally

9   unconscionable.  (*Id.*)

10      **2.    The Arbitration Agreement Is Substantively Unconscionable**.

11      ACS' arbitration agreement is also substantively unconscionable for several reasons: 1) it

12  covers only the types of claims employees are likely to have; 2) it requires arbitration proceedings to

13  be confidential and secret - unless the employer decides otherwise; 3) it reserves exclusively for the

14  employer the unilateral power to change or terminate the DRP; and 4) it violates California public

15  policy by attempting to insulate itself from examination for unconscionability under the laws of the

16  state of California.

17      **a.    The Arbitration Agreement Is Not Mutual; It Only Requires the Claims**
            **Likely to Be Brought by Employees to Be Arbitrated.**

18      "In assessing substantive unconscionability, the paramount consideration is mutuality." (*Fitz,*

19  *supra,* 118 Cal.App.4th at 723.)  Defendant's arbitration agreement is not mutual, as it does not

20  include in its coverage the types of claims employers most likely bring against employees, such as

21  "claims involving patents, trademarks, or intellectual property or trade secrets." (*Id.*)  On the other

22  hand, the arbitration agreement expressly includes every type of claims specific to employees, *i.e.*

23  claims relating to "discrimination based on race, sex, religion, national origin, age, veteran status or

24  disability . . . ."   (Defendant's Motion, Ex. A-1 to Son Decl., DRP p.2, #2.D.4.)  The reality is that

25  only an employee's claims are the claims included in the scope of Defendant's arbitration agreement.

26      An agreement that does not include the types of claims an employer is most likely to bring

27  against its employees is not mutual and is substantively unconscionable:

28

**THE
DOLAN
LAW FIRM**
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

11

1    As to substantive unconscionability, the arbitration policy is one-sided and harsh. Inland
2    insists that the policy imposes a mutual obligation to arbitrate but the argument does not
     square with the language of the policy. [Defendant] is right that the first paragraph
3    expressly applies to any dispute arising out of the termination; but disputes 'arising out of
     the termination' of an employee are the very claims that 'are virtually certain to be filed
4    against, not by [the employer].' (*Stirlen v. Supercuts, Inc., supra*, 51 Cal.App.4th at pp.
     1540–1541, 60 Cal.Rptr.2d 138.) Indeed, the arbitration policy adds a nonexclusive list of
     the statutes and laws to which it applies, all are of equal employment and
5    nondiscrimination laws. Employees bring actions under these laws.

6    *(Zullo, supra,* 197 Cal. App. 4th at 486; see also *Samaniego, supra,* 205 Cal.App.4th at 1147-48;

7    *Trivedi, surpa,* 189 Cal. App. 4th at 396; *Fitz, supra,* 118 Cal.App.4th at 725; *Ferguson v.*

8    *Countrywide Credit Industries, Inc.* (2002) 298 F.3d 778, 784-85.)

9    Here, as in *Zullo*, ACS' DRP only provides for the arbitration of claims that are virtually

10   certain to be filed against, and not by, the employer.  In a full paragraph of various laws under which

11   claims must be arbitrated, Defendant only lists civil rights, fair employment, benefits, human rights

12   and non-discrimination laws, applicant's application, and personal injury.  (Defendant's Motion, Ex.

13   A-1 to Son Decl., DRP p. 2-3, D.1-6.)  Notably absent from this list are the most common suits

14   brought by employers:  "claims involving patents, trademarks, or intellectual property or trade

15   secrets." (*Fitz, supra,* 118 Cal.App.4th at 723.)

16   The test to determine whether a contract has "basic fairness" is whether both parties must

17   arbitrate all claims arising from the same transaction or occurrence.  (*Fitz,* 118 Cal.App.4th at 725,

18   *citing Armendariz*, 24 Cal.4th at 120.  *Fitz* gives the example of a wrongful termination dispute where

19   the employee alleges age discrimination and the employer alleges the employee divulged trade secrets.

20   (*Fitz,* 118 Cal.App.4th at 725.)  In *Fitz,* as well as under the ACS' arbitration agreement here, the

21   employee's discrimination claim must be brought under arbitration but the employer's trade secret

22   claim is excluded from arbitration.  (*Id.*; Defendant's Motion, Ex. A-1 to Son Decl., DRP, p. 2-3, D.1-

23   6.)  Under California law, such a situation impedes a plaintiff's vindication of statutory rights, and thus

24   it is substantively unconscionable.   (*Fitz,* 118 Cal.App.4th at 725.)

25          **b.     The Arbitration Agreement Gives ACS Unilateral Power To Terminate
                      and/or Modify The Agreement.**
26   Further, ACS' retention of the unilateral right of termination or modification is also

27   unconscionable as a matter of law.  In *Ingle v. Circuit City Stores, Inc.* the Ninth Circuit explained,

28

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

12

1   "We have, however, held that the unilateral modification provision . . . is unenforceable as a matter of

2   California law  . . . we conclude that the provision affording [the employer] the unilateral power to

3   terminate or modify the contract is substantively unconscionable." ((9th Cir. 2003) 328 F.3d 1165,

4   1179.)

5         Here, the DRP states: "This Plan may be amended by Sponsor at any time by giving at least 10

6   days notice . . . to current employees." (Defendant's Motion, Ex. A-1 to Son Decl., DRP p.5, # 6.) The

7   DRP continues, "Sponsor may amend the Rules at any time by serving notice of the amendments on

8   AAA or JAMS." (*Id.*)  The DRP further states: "This Plan may be terminated by Sponsor at any time

9   by giving at least 10 days notice of termination to current Employees."  Because ACS maintains the

10   unilateral right of termination or modification, the arbitration agreement is unconscionable as a matter

11   of law.

12         **c.**     **The Policy's Confidentiality Provisions Are Not Mututal, Are Overbroad and Contravene Public Policy.**

13         The DRP that Defendant seeks to enforce contains a confidentiality provision providing the

14   following:

15         The Dispute Resolution Plan ("Plan"), its Administrator, any subordinate administrators,
the staff of the Plan and any other person conducting conferences or serving as an

16   impartial third party on behalf of the Plan in any in-house dispute resolution process
conducted under the auspices of the Plan, will hold matters reported under the Plan and

17   related communications in confidence.  For purposes of requests by or subpoenas from
any party that the Plan Administrator or any subordinate administrators, or any member

18   of the staff of the Plan in any in-house dispute resolution process conducted under the
auspices of the Plan, provide testimony in any internal or external investigation,

19   administrative hearing, or arbitration or litigation proceeding, the confidentiality
standards described in this section attach to the Dispute Resolution Plan, rather than any

20   individuals disputant. **This means that <u>only the Plan, rather than any individual
disputant, may waive confidentiality</u>.**

21   (Defendant's Motion, Ex. A-1 to Son Decl., DRP p.5, # 5.A. (emphasis added).).

22         The Ninth Circuit addressed such confidentiality provisions in *Ting v. AT&T*, where the Court

23   found that:

24         Although facially neutral, confidentiality provisions usually favor companies over
individuals. This the Court reasoned was due to the 'repeat player' effect, as AT&T has

25   placed itself in a far superior legal posture by ensuring that none of its potential
opponents have access to precedent while, at the same time, AT&T accumulates a wealth

26   of knowledge on how to negotiate the terms of its own unilaterally crafted contract.
Further, the unavailability of arbitral decisions may prevent potential plaintiffs from

27   obtaining the information needed to build a case of intentional misconduct or unlawful
discrimination against AT&T. For these reasons, we hold that the district court did not
err in finding the secrecy provision unconscionable.

28   ((9th Cir. 2003) 319 F.3d 1126, 1151-1152.)

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**

13

While Defendant's confidentiality provision is applicable to both parties, Plaintiff is disadvantaged in that ACS has access to all precedent, while Plaintiff does not. This one-sided term demonstrates the unconscionability of Defendant's entire system of arbitration. Such confidentiality compounds the "repeat player" effect, wherein an employer frequently engaged in arbitrations before a certain panel is shown favoritism. The DRP's confidentiality provision ensures that ACS benefits from the repeat-player effect in mandatory arbitration. It is well recognized that "[v]arious studies show" that arbitration reduces the size of a successful verdict/award if employers are repeat-players in arbitration." (*Armendariz, supra*, 24 Cal.4th at 115.) "Even the independent arbitration companies have an economic interest in being looked on kindly by large institutional corporate defendants who can bring repeat business." (*Id.*) ACS, which is a major corporation likely facing constant litigation, ensures that by requiring arbitration and confidentiality that "none of its potential opponents [*i.e.*, employees] have access to precedent while, at the same time, [the employer] accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract." (*Ting, supra*, 319 F.3d at 1152 (holding agreement unconscionable).) The Ninth Circuit concluded, "if the company succeeds in imposing a gag order, plaintiffs are unable to mitigate the advantages inherent in being a repeat player." (*Id.*) Additionally, confidentiality ensures that there is no public record available to scrutinize for potential favoritism.

Confidentiality also prevents employees from gathering evidence. In discrimination suits, "me too" evidence of treatment of other employees is admissible. (*Pantoja v. Anton*, (2011) 198 Cal.App.4th 87, 112.) But, ACS' arbitration agreement prevents employees from obtaining such evidence because Plaintiff cannot consult with others outside of the arbitration proceeding. As all proceedings are confidential, Plaintiff may not mention that she has initiated arbitration to others not involved. For the same reason, **this confidentiality provision also violates the California Labor Code**, which prohibits employers from preventing employees from disclosing working conditions. (Cal. Labor Code § 232.5.) On the other hand, an employer's lawyers may interview their own employees and gather evidence, and then assert privilege and work product to ensure confidentiality.

**The confidentiality provision prevents a plaintiff from sharing the details of her dispute**

THE
DOLAN
LAW FIRM
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO,
CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION
14

1   **and its outcome, despite the fact that civil rights trials serve an important public purpose**.

2   (*Peralta Comm. College Dist. v. F.E.H.C.* (1990) 52 Cal.3d 40, 44 (freedom from discrimination is a

3   civil right and discrimination is against public policy).)   **Secrecy also eradicates the public effect of**

4   **a damage award**: "The awarding of damages will not only deter the wrongdoer, it will send a

5   message to other employers that they must pay for the consequences of their discrimination." (*Id.* at

6   63.)   Likewise, "**the unavailability of arbitral decisions may prevent potential plaintiffs from**

7   **obtaining the information needed to build a case of intentional misconduct or unlawful**

8   **discrimination**." (*Ting, supra,* 319 F.3d at 1152.)

9          Further, as discussed above, mutuality is a paramount consideration when assessing

10   substantive unconscionability. (*Fitz, supra,* 118 Cal.App.4th at 723.)   Here, the confidentiality

11   provision acts non-mutually as it allows 'the Plan', *i.e.*, ACS, the sole authority to waive

12   confidentiality.   That means that ACS really is not bound to any confidentiality since it has the right to

13   waive confidentiality at any time, while Plaintiff must adhere to the strict confidentiality provision at

14   all times without any right to waive confidentiality.   The confidentiality provision further acts non-

15   mutually as it to prevents Plaintiff from gathering evidence to vindicate her statutory rights; as it also

16   allows ACS to conceal evidence of investigative efforts in this case, prior adjudications of its

17   discriminatory practices for use in future litigation, and enhances the repeat-player effect, it is

18   substantively unconscionable. (*Ting*, 319 F.3d at 1152-53.)

19                  **d.       ACS' DRP Seeks to Avoid State Law Analysis.**

20          Defendant's DRP is unconscionable with respect to the law that applies to the enforceability of

21   its alleged agreement.   The DRP states that "The enforceability and scope of the Plan shall be

22   governed by the Act and federal law." (Defendant's Motion, Ex. A-1 to Son Decl., DRP p. 4, #3.G.)

23   While it is true that under the FAA arbitration is favored, "that policy does not come into effect until a

24   court has concluded that under state contract law, the parties entered into an agreement to arbitrate."

25   (*Lopez, supra,* 118 Cal. App. 4th at 1229.)   The FAA rules do not apply until the existence of an

26   enforceable arbitration agreement is established under state law principles involving formation,

27   revocation and enforcement of contracts generally. (*Id.*)

28

THE
DOLAN
LAW FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
SAN FRANCISCO,
CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**
15

1  Defendant's attempt to circumvent the laws of California is a flagrant violation of the public

2  policy and renders this agreement unconscionable.  In *Discover Bank v. Superior Court*, the California

3  Supreme Court stated in regards to class action waivers that "such contracts may also be substantively

4  unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are

5  contrary to public policy." ((2005)113 P.3d 1100, 1108.) The Supreme Court continued by citing to

6  California Civil Code 1668, "All contracts which have for their object, directly or indirectly, to exempt

7  anyone from responsibility for his own fraud, or willful injury to the person or property of another, or

8  violation of law, whether willful or negligent, are against the policy of the law."  (*Id.*)

9       In the present case, Defendant's DRP term circumventing California law is seeking to exempt

10  the Defendant from having its unconscionable and unenforceable DRP analyzed under the laws of

11  California.  The Supreme Court further stated that "the FAA does not federalize the law of

12  unconscionability or related defenses except to the extent that it forbids the use of such defenses to

13  discriminate against arbitration clauses." (*Id.* at 1112-1113.)  Here, Defendant is seeking to avoid an

14  unconscionability analysis altogether by essentially using Federal Common Law, as a weapon that

15  allows the arbitration agreement to escape any scrutiny whatsoever.  Defendant's choice-of-law-term

16  attempts to create mechanism that would make its alleged agreement impervious to scrutiny.  That in

17  itself renders the agreement unconscionable.

18       **E.       Severance Cannot Remove The Taint of Unconscionability.**

19       For Plaintiff in this case, the only proper remedy is to strike the entire DRP. Severing the

20  numerous unenforceable and unconscionable clauses is not in the interests of justice. (*Armendariz,*

21  *supra,* 24 Cal.4th at 124 ("The overarching inquiry is whether the interests of justice . . . would be

22  furthered by severance." (*internal quotes omitted*).)  As the California Supreme Court stated, **if an**

23  **agreement is non-mutual, or if "there is no <u>single</u> provision a court can strike or restrict in**

24  **order to remove the unconscionable taint from the agreement," then the agreement as a whole is**

25  **void**.  (*Id.* at 124-25 (*emphasis added*); *see also O'Hare v. Municipal Resource Consultants* (2003)

26  107 Cal.App.4th 267, 279.)  Such result is necessary here because "multiple defects indicate a

27  systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as

28  an inferior forum that works to the employer's advantage." (*Armendariz,* 24 Cal.4th at 124.)  A court

**THE
DOLAN
LAW FIRM**
THE DOLAN LAW FIRM
1438 MARKET STREET
SAN FRANCISCO,
CA
94102
TEL: (415) 421-2800
FAX: (415) 421-2830

**PLAINTIFF MARILOU RAYMUNDO'S OPPOSITION TO DEFENDANT ACS STATE & LOCAL SOLUTIONS, INC.'S
MOTION TO COMPEL ARBITRATION AND STAY THE ACTION PENDING ARBITRATION**
16

1   may refuse to enforce a contract if "the contract or any clause of the contract" is found

2   "unconscionable at the time it was made."  (Civil Code § 1670.5(a).)  Additionally, severance is not

3   appropriate because the Policy does not provide that it is severable.

4        California Courts frequently invalidate and refuse to sever agreements that have <u>more than one</u>

5   unconscionable provision.  (*See, e.g., Ontiveros v. DHL Express (USA), Inc*. (2008) 164 Cal.App.4th

6   494, 515 (provision assigning determination of enforceability to arbitrator, requirement plaintiff pay a

7   fee, discovery limitations) *Fitz*, 118 Cal.App.4th at 726-27 (discovery limitations and lack of

8   mutuality of arbitrable claims); *Ferguson, supra,* 298 F.3d at 784-85 (imposition of fees, lack of

9   mutuality of arbitrable claims, and discovery limitations); *Abramson v. Juniper Networks, Inc.* (2004)

10  115 Cal. App. 4th 638; *Pokorny v. Quixtar* (9th Cir. 2010) 601 F.3d. 987, 994.)

11  **IV.     CONCLUSION**

12        For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's motion in

13  its entirety.

14  DATE: February 19, 2013             **THE DOLAN LAW FIRM**

15                  By:       /s/

                         Christopher B. Dolan

16                        Michael J. DePaul

                         Ghazaleh Modarresi

17                        Attorneys for Plaintiff RAYMUNDO

18

19

20

21

22

23

24

25

26

27

28

**THE
DOLAN
LAW FIRM**
TRIAL LAWYERS
THE DOLAN BUILDING
1438 MARKET STREET
**SAN FRANCISCO,
CA**
94102
TEL: (415) 421-2800
FAX: (415) 421-2830